### France v. Chesapeake & Ohio Railway Company.

(Decided November 26, 1913).

Appeal from Rowan Circuit Court.

1. Ejectment—Boundaries—Peremptory Instruction.—In an action to recover possession of land from an adjacent holder, the parties

having derived title from a common source, and, in the deeds of plaintiff and his vendors, the boundary is fixed at the line of the deed to defendant's vendor, of a prior date, which fixes the boundary line at fifty feet from the center of the original or main railroad track; and the evidence showing that such track had been located or built at the time of the execution of the deed and that the land in controversy lies wholly within the fifty feet, a peremptory instruction directing a verdict for the defendant was proper.

2. Ejectment—Action—Sufficiency of Petition—Adverse Possession. —In an action of ejectment, an amended petition setting up adverse possession by plaintiff of the land in controversy continuously for a period of fifteen years before the commencement of the action, offered to conform to the proof, was properly rejected, as the evidence showed that in such possession, the use of the land was not adverse, but a permissive use only.

3. Easement—Permissive Use.—The permissive use of a railroad right of way by the public gives to those enjoying such use no legal right to a passway over it.

SCOTT & HAMILTON, CAUDILL & PROCTOR, W. C. G. HOBBS and J. T. FARMER for appellants.

YOUNG & CLAY, SHELBY & SHELBY and R. L. NORTHCUTT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action of ejectment involves the title to, and possession of, a parcel of ground twenty-five and seven-tenths feet in width and one hundred feet in length, lying in front of an enclosed half acre lot, in the town of Morehead, owned and occupied as a place of residence by the appellant, Luke France.

The petition sets forth the boundary of the half-acre lot and of the parcel in controversy lying in front thereof, and alleges appellant's ownership of both; also, that the appellee has wrongfully taken possession of the strip of ground in controversy by constructing two sidetracks thereon; the last leaving a space of but four or six feet between its outer rail and the line of the half acre lot. By the prayer of the petition, judgment is asked for the recovery of the ground in controversy and damages for the appellee's alleged wrongful possession and detention thereof.

The answer denies appellant's title to the parcel of ground in controversy and alleges appellee's ownership and rightful possession thereof, under title acquired by deed of date November 11, 1880, from John Hargis, the

then owner thereof, to the Elizabethtown, Lexington & Big Sandy Railroad Company, appellee's predecessor and vendor, and by deed from the latter, of a later date, to appellee.

On the trial of the case in the court below and after the introduction of all the evidence, the jury, in obedience to a peremptory instruction from the court, returned a verdict in favor of appellee. Appellant filed a motion and grounds for a new trial, which was over-: ruled, and from the judgment entered upon the verdict, he prosecutes this appeal.

It. is manifest from the evidence in the record that appellant has no title to the ground in controversy, unless it lies outside of the boundary of the six and half acres of land conveyed, by the deed of John Hargis of; November 11, 1880 to the Elizabethtown, Lexington & Big Sandy Railroad Company, and by the latter to appellee. This was the view taken of the case by the trial court, and the peremptory instruction directing a verdict for appellee was given upon the theory that the evi-' dence introduced in appellants' behalf, not only failed to show that the ground in controversy was outside of the. boundary of the Hargis deed, but that the evidence, as a whole, clearly showed it to be within the boundary of the Hargis deed, which, consequently, sustained appellee's claim of title thereto. In this conclusion, we concur.

The Hargis deed not only describes the six and a half acres, conveyed to appellee's vendor, by metes and bounds, courses and distances, but further. describes it as extending fifty feet on either side from the middle of · the main railroad track; and it is patent, from the language of the deed, that the main track had been constructed, or at any rate surveyed and located, prior to the execution of the conveyance. After this deed was made, Hargis conveyed several different tracts of land abutting upon appellee's right of way. Among these, was the half acre lot of ground upon which appellant now resides, which was conveyed by deed from Hargis to John Strider, by Strider to Richard Peyton, and by the latter to appellant. These deeds were all made after that from Hargis to appellee's vendor of date, November 11, 1880, and ever since the execution of the deed of November 11, 1880, the location of the lines of appellee's right of way, as described and fixed thereby, according to the evidence, have been universally accepted

until appellant, shortly before the institution of his action, set up claim to the parcel now in controversy lying immediately in front of his half acre lot. It further appears from the evidence that such claim was not made by appellant until appellee, in order to handle its increased traffic, found it necessary to, and did, construct, on the ground in controversy and other portions of its right of way, at each end thereof, two additional tracks for the use of its cars. The last of these tracks and the one lying nearest to appellant's lot is known as an "interchange" track; that is, a track upon which loaded cars of freight are placed for removal by a connecting carrier, the Morehead & Northfork railroad, which has but lately been constructed.

It is to be borne in mind that appellant and appellee derived title to their respective lands from a common source, John Hargis being the grantor of both. It is evident that the front line of appellant's lot cannot be located within the line of the deed from John Hargis to appellees' vendor, because his deed, and those of his vendors, Strider and Peyton, called to run with the line of the Hargis deed on the south side of the main railroad track; and the only evidence introduced in his behalf which tended to show that the boundary of appellant's deed included the land in controversy, was furnished by the testimony of one Cassity, who, previous to the institution of the action, made a partial survey of the lines of the Hargis deed, at appellant's request. Cassity attempted to survey but two of the calls in the deed from Hargis to appellee's vendor; and, while endeavoring to find the line on the south side of the main track for which appellant's deed calls, he ran by the calls of the deed from Hargis to appellee's vendor, S. 22 degrees, 11 minutes E., a distance of, perhaps, 1,247 feet and, by some calculation for variation of the compass, apparently so fixed the line as to leave the ground in controversy within the boundary of the appellant's deed; according to his own admission, this running of the south line was without regard to the requirement contained in the deed from Hargis to appellee's vendor, that it must be run and established "fifty feet parallel with and from the center of said railroad", which, if done, would have included the ground in controversy in appellee's right of way.

It, however, appears from the evidence, that Cassity, during the progress of the trial, by direction of the court, made the measurement from the center of the main or original railroad track, directly in front of appellant's lot, and thereby found that the track nearest the line of appellant's lot, (i. e., the interchange track) is situated wholly within the fifty feet mentioned in the deed from Hargis and wife to appellee's vendor. Other witnesses introduced by appellant, two or three of whom have lots situated on a line with appellant's lot and bordering on appellee's right of way, and have by suit, set-up claim to such parts thereof as lie in front of their respective lots, testified as to the location of the south line of appellee's right of way and fixed it as claimed by appellant. But others, including the witnesses, Day and Carey, established the line as claimed by appellee, by identifying certain objects and monuments which were built upon the right of way many years ago, such as a section house, windmill, old depot, etc. In addition, Carey, a former postmaster at Morehead and county judge of Rowan County, who has lived in the community since 1874 and has all along been thoroughly acquainted with the lines of appellee's right of way, testified that he, at one time, owned several of the lots abutting upon the right of way and situated on a line with appellant's lot, and that the front line of the lots formerly owned by him and of that owned by appellant has always been recognized and known to be fifty feet from the center of appellee's main line of track.

After all is said, the controlling facts are that appellant's deed calls to run with the south line of the deed from Hargis to appellee's vendor, and that the latter deed fixes the true line, separating appellee's right of way from appellant's lot, at fifty feet from the center of the original or main railroad track, which is decisive of the controversy and necessitated the giving of the peremptory instruction directing a verdict for appellee.

This disposes of appellant's complaint of the peremptory instruction and also his contention that the trial court erred in refusing him permission to file an amended petition, which was offered during the progress of the trial. The amended petition sets up, as a further cause of action, that, prior to the construction of the two railroad tracks upon the ground in controversy, it has been open and in use as a public street or passway by appellant, his vendors, and the public generally, for more than

fifteen years adversely to the appellee and its vendor; and furthermore, that the construction and presence of the two tracks thereon constitute an obstruction, not only to the public but to appellant individually, preventing ingress and egress to and from his residence.

It is sufficient to say that, as the amended petition, if allowed to be filed, would not have conformed the pleadings to the proof, its rejection by the court was not an abuse of discretion. While there was evidence to the effect that appellee's right of way now occupied by the two recently constructed tracks was, prior to their construction, used more or less as a passway by the public, including appellant, even for the length of time claimed by appellant, such use was merely permissive. No claim was ever made by appellant or others, prior to the laying of the last of the two tracks referred to, that he or the public had any right to the use of the ground in question. Indeed, we may say of the evidence that it fails to show that appellant, his vendors, or the public, ever had any right to the use of appellee's right of way where the new tracks are now situated. Their merely passing over the right of way did not interfere with its use by appellee; and the character of the ground, its proximity to the appellee's depot, and the rapid growth of the latter's business as a carrier, made it known to the appellant and the public, from the time the entire right of way was acquired by appellee, that it would ultimately be put to the use to which it has been devoted. The case is similar in its facts to many others in which we have held that such permissive use of a railroad company's right of way, as is here shown, gives to those enjoying such use no legal right to a passway over it. Thompson v. L. & N R. R. Co., 110 Ky., 973; L. & N. R. R. Co. v. Hagan, 141 Ky., 20; Brown v. L. & N. R. R. Co., 97 Ky., 236; Thornton v. L. & N. R. R. Co., 39 S. W., 694; C. & O. Ry. Co. v. Perkins, 47 S. W., 259; L. & N. R. R. Co. v. Childers & Only, &c., 155 Ky., 652.

The record presenting no prejudicial error authorizing a reversal, the judgment is affirmed.